(C. D. 1750)

Martin Brokerage Company v. United States

United States Customs Court, Second Division

(Decided January 12, 1956)

Plaintiff not represented by counsel.

*Warren E. Burger*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: There are involved in this action several importations of a commodity known as hardboard, which entered this country through the port of El Paso, Tex., during the period between February and June 1951. This merchandise was classified by the collector of customs at the port of entry as plate finished pulpboard, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and, accordingly, assessed with duty at the rate of $7.25 per ton, but not less than 7½ per centum, nor more than 15 per centum ad valorem.

It is here claimed that the hardboard in issue should have been classified as wallboard, not plate finished, within the provisions of paragraph 1402 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T. D. 52462, and that, therefore, the proper rate of duty should be 5 per centum ad valorem.

The foregoing respective tariff provisions read as follows:

Paragraph 1413, as modified by T. D. 51802, supra:

Paper board and pulpboard, including cardboard and leatherboard or compress leather, plate finished, supercalendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, or decorated or ornamented in any manner:

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Other_____ $7.25 per ton of 2000 lb., but not less than 7½% nor more than 15% ad val.

Paragraph 1402, as modified by T. D. 52373 and T. D. 52462, supra:

Paper board, wallboard, and pulpboard, including cardboard (but not including leather board or compress leather, and except strawboard, solid fiber shoe board and all counter board, and pulpboard in rolls for use in the manufacture of wallboard), not plate finished, supercalendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, decorated or ornamented in any manner, nor cut into shapes for boxes or other articles and not specially provided for:

Wallboard and wet-machine board other than beer mat board__5% ad val.

Because of their pertinency to the issues raised in this action, we quote also the following provisions of the Tariff Act of 1930 and the Customs Regulations of 1943, both as amended:

Section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

\* \* \* No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

Section 16.10a of the Customs Regulations of 1943, as added by T. D. 52588 (85 Treas. Dec. 302):

16.10a Tariff classification of prospective imports.—(a) Any prospective importer or foreign exporter may apply in writing to the Commissioner of Customs, Washington 25, D. C., for a ruling as to the tariff classification of any article which he intends to import into or ship to the United States in commercial quantities.

The application shall contain a full description of each article. The application shall also give the following information, unless it is clear that it will be of no value in determining the tariff classification of the article: (1) the respective quantities and values of the component materials of which the article is composed; (2) information as to its chief use and commercial designation in the United States; and (3) any specifications, analyses, or other information deemed necessary to a tariff classification of the article. Whenever practicable, a sample of the article should be submitted with the application.

(b) If the Commissioner is satisfied (1) that the application is made in good faith by an importer or foreign exporter who is properly and directly concerned with the tariff classification of the article described; (2) that the information submitted or otherwise available is adequate for a considered decision; and (3) that the ruling applied for is not already covered by a controlling published decision, the Commissioner will rule on the tariff classification of the article. A copy of the decision will be mailed to the applicant. The decision will be published in the weekly Treasury Decisions if it will affect a substantial volume of imports or if it is for any other reason of sufficient importance to justify such publication.

(c) Any decision published pursuant to subsection (b) shall be deemed to establish a uniform practice within the meaning of section 315, Tariff Act of 1930, as amended. The decision will not be changed by a further ruling of the Commissioner to impose higher duties on such an article unless the prior decision should prove to be clearly wrong. When it appears to the Commissioner that a correct interpretation of the law may require such a ruling, notice that the prior ruling is under review will be published in the Federal Register so that the parties in interest will have an opportunity to make such written submissions as they desire, within a period which will be specified in the notice, with respect to the correctness of the contemplated action. If after the consideration of such submissions as may be received the Commissioner issues a ruling imposing higher duties, it will be effective only as to merchandise entered for consumption or withdrawn from warehouse for consumption on or after the expiration of 30 days after the date of publication of such ruling in the weekly Treasury Decisions.[1]

(d) The notice procedure outlined in paragraph (c) will be applied also in any other case in which the Commissioner believes that a correct interpretation of the law may require the issuance of an administrative ruling imposing higher duties on an imported article than has been assessed under an established and uniform practice.

It appears that the substantive question of whether the instant hardboard is, in fact, plate finished pulpboard, as classified by the collector, or alternatively, wallboard, not plate finished, as claimed by plaintiff, has not been posed by the parties. Plaintiff's protests, which we are requested to regard as its brief in the premises, allege that, by virtue of the provisions of section 16.10a of the Customs Regulations of 1943, as added, *supra*, the collector is, in effect, estopped from classifying the subject merchandise as plate finished pulpboard.

The record before us establishes that, prior to the first of the involved importations and pursuant to the procedure provided for in said section 16.10a, as outlined in T. D. 52588, the Mexican manu-

---

[1] By amendment, approved August 29, 1952, the notice period before a change in classification becomes effective was extended to 90 days. (87 Treas. Dec. 265, T. D. 53093.)

facturer, Fibracel, S. A., by letter, dated December 16, 1950, applied to the Commissioner of Customs for a ruling on the proper classification of certain so-called wallboard, which it planned to manufacture and ship to the United States. The letter (plaintiff's exhibit 1) described the proposed process of manufacture and purportedly enclosed samples of various grades of the product, together with a brochure, in Spanish, giving a description, with pictures, of the manufacturing process.

Apparently, Fibracel, S. A., supplemented its letter of inquiry by a telegram, dated January 18, 1951 (defendant's exhibit A), to which the Commissioner replied by telegram, dated January 22, 1951, as follows:

RETEL JANUARY 18 FIBRACEL DURO AND FIBRACEL EXTRA-DURO CONTAINING NO BINDING AGENT OTHER THAN LIGNIN IF NOT PLATE FINISHED, STAINED, OR CALENDERED DUTIABLE AT FIVE PERCENT AD VALOREM WALLBOARD PARAGRAPH 1402 TARIFF ACT AS MODIFIED.

On the same day, to wit, January 22, 1951, the Commissioner also advised the Mexican producer by letter (defendant's exhibit B) in response to the original inquiry that "Upon the basis of the information presented the Bureau is of the opinion that this merchandise is dutiable at the rate of 5 percent ad valorem under the provision in paragraph 1402, Tariff Act of 1930, as modified, for wallboard and pulpboard not plate finished, * * *."

The shipments of hardboard covered by the instant protests there upon ensued.

In a letter, dated June 25, 1951 (defendant's exhibit C), the Commissioner advised Fibracel, S. A., that, as a result of recently received information, he was clearly of the view that the products mentioned in plaintiff's exhibit 1 were plate finished, and, since excluded from classification in paragraph 1402, *supra*, by specific language, were properly subject to duty at the rate of $7.25 per ton, but not less than 7½, nor more than 15 per centum ad valorem, as provided in paragraph 1413, *supra*. All of the involved entries were liquidated in accordance with this ruling.

Plaintiff contends that the letter of June 25, 1951, constituted a change of existing, uniform practice, which could not become effective without previous notice of 90 days, in view of the provisions of said section 16.10a of the Customs Regulations of 1943. Since all of the entries herein were made prior to the ruling of June 25, 1951, it is urged that the application of the higher rate was without legal authority.

Counsel for the Government argues that the letter of June 25, 1951, did not effect a change in practice for the reason that the Commissioner's ruling, as embodied in both the telegram and letter of Janu-

ary 22, 1951, prescribed as a condition for the assessment of the 5 per centum rate, the absence of plate finishing. As there is no evidence in the record to overcome the presumption of correctness attaching to the collector's classification of the merchandise at bar as plate finished pulpboard, it is the position of the defendant that the conditions imposed by the Commissioner have not been met.

We are not inclined to adopt the view that defendant's exhibit A formed any part of the Commissioner's decision to allow plaintiff's importations to be entered and classified within the provisions of paragraph 1402, *supra*. The regulation under which the request for advance classification was made provided that "A copy of the decision will be mailed to the applicant." Any other method of transmitting the decision, as by personal advice, telephonic, or telegraphic communication would not constitute a compliance with the requirement of the regulation. Mailing presupposes the entrustment of a written document properly enclosed and stamped to public authority for delivery, as requested by the sender. However, no useful purpose would be served by dwelling at length upon this phase of the the case. For reasons which will appear *infra*, we are constrained to overrule plaintiff's claim.

It is a well-settled maxim of customs jurisprudence that no importer has a vested right in the maintenance of a given classification for his merchandise. Any consistency upon which he may absolutely rely derives exclusively from the fundamental law—the prevailing tariff act and such modifications thereof as are applicable to his transaction. The statute, which is here controlling, is section 315 of the Tariff Act of 1930, as modified by the Customs Administrative Act of 1938, *supra*. It provides in substance that where the Secretary of the Treasury shall have found the existence of an established and uniform practice with regard to imported merchandise there shall be no new administrative ruling resulting in the imposition of a higher rate of duty upon merchandise entered for consumption or withdrawn from warehouse prior to the expiration of 30 days after the publication of such new ruling. The core of the notice-of-change requirement is the finding of an established and uniform practice by the Secretary of the Treasury. His omission to so find obviates any need for notice prior to an effective change. *Washington Handle Co.* v. *United States*, 34 C. C. P. A. (Customs) 80, C. A. D. 346; *Naumes Forwarding Service* v. *United States*, 42 C. C. P. A. (Customs) 110, C. A. D. 581.

Section 16.10a of the Customs Regulations of 1943, as added, *supra*, implements said section 315 to the extent that it outlines the circumstances under which a decision of the Commissioner of Customs as to prospective classification of imported merchandise shall be regarded as establishing a uniform practice not subject to change except upon

notice. It provides that where a request for classification in advance of importation is made, the decision thereon will be published in the weekly Treasury Decisions "if it will affect a substantial volume of imports or if it is for any other reason of sufficient importance to justify such publication." By the terms of subdivision (c) of the regulation, only a decision published accordingly is regarded as establishing a uniform practice, within the meaning of said section 315, as amended. In the light of said section 315, the ensuing language prohibiting a change in decision without notice, as therein provided, can only apply to published decisions. Any decision which has not been published is not regarded as representing a uniform practice and, hence, is not subject to the requirement of notice before it may be revised.

We have carefully examined the weekly Treasury Decisions for the period between January and June of the year 1951 and find no evidence that the instant decision was ever published. Neither is there any other evidence tending to show that a uniform practice for the classification of hardboard, such as that here involved, as wallboard, not plate finished, in fact, existed. Accordingly, no notice of change of ruling was here required.

We have arrived at this conclusion most reluctantly, as it is clear to us that plaintiff and its foreign supplier were misled by the Commissioner's letter of January 22, 1951. Nevertheless, we have not been able to find any limitation upon the Commissioner's power to change an administrative ruling, and require the assessment of higher rates of duty than has theretofore been the case, in any instance in which an established and uniform practice has not been shown to exist.

In view of the foregoing considerations, we find no error in the collector's classification of the merchandise at bar within the provisions of paragraph 1413 of the Tariff Act of 1930, as modified, *supra*, as plate finished pulpboard. The claim of the plaintiff to the contrary is, therefore, overruled.

Judgment will be entered accordingly.