**SENECA GRAPE JUICE CORP.**

v.

**UNITED STATES.**

C. D. 4486;  Court No. 71/99–45045–67.

United States Customs Court.

Nov. 29, 1973.

Serko & Sklaroff, New York City, (Murray Sklaroff, New York City, of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen., Steven P. Florsheim, trial atty., New York City, for defendant.

RE, Judge:

In this action, which comes before the court on cross-motions for summary judgment, the legal question presented pertains to the proper dutiable quantity of concentrated lemon juice exported from Italy. The merchandise, entered at the port of New York on December 31, 1963 was classified under item 165.-35 of the Tariff Schedules of the United States (TSUS) at the rate of 35 cents per gallon of reconstituted juice.

The pertinent classification provision reads as follows:

"Fruit juices, including mixed fruit juices, concentrated or not concentrated, whether or not sweetened:

    Not mixed and not containing over 1.0 percent of ethyl alcohol by volume:

        \*     \*     \*     \*     \*     \*

        Citrus fruit:

\*   \*   \*           Lime .......................... \*   \*   \*

        Other:

\*   \*   \*           Not concentrated ............. \*   \*   \*

165.35              Concentrated ................ 35¢ per gal." [1]

---

[1]. The term "gallon" under the rates of duty column applicable to fruit juices is defined in headnote 3(a) of schedule 1, part 12, sub-part A as "gallon of natural unconcentrated juice or gallon of reconstituted juice".

The term "reconstituted juice" is defined in headnote 3(b) of schedule 1, part 12, subpart A as "the product which can be obtained by mixing the imported concentrate with water in such proportion that the product will have a Brix value equal to that found by the Secretary of the Treasury from time to time to be the average Brix value of like natural unconcentrated juice in the trade and commerce of the United States". The term "Brix value" is defined in headnote 3(c) of schedule 1, part 12, subpart A, as the "refractometric sucrose value of the juice, adjusted to compensate for the effect of any added sweetening materials, and thereafter corrected for acid." The method to be employed in determining the number of gallons of reconstituted juice is set out in headnote 4 of schedule 1, part 12, subpart A.

On March 23, 1964, the Assistant Secretary of the Treasury, through the Commissioner of Customs, determined that the average Brix value of natural unconcentrated lemon juice was 8.9 for the purposes of headnote 3 of schedule 1, part 12, subpart A. This ruling was published in the Federal Register on March 31, 1964 (29 F.R. 4150, 99 Treas. Dec. 185, T.D. 56135), and made effective as of that date. The Brix value of 8.9 was subsequently utilized to determine the dutiable quantity of the concentrated lemon juice herein upon liquidation of the entry on August 16, 1967.

Plaintiff does not contest the classification, rate of duty assessed, or method employed in calculating the dutiable quantity as provided in the tariff schedules headnotes. It does contend, however, that the application of a value of 8.9 was erroneous and improper, and that a Brix value of 9.4 should have been used instead. An increase in the Brix value is accompanied by a decrease in concentration and, consequently, a decrease in duties, and *vice versa*.

Accordingly, plaintiff has moved for summary judgment directing the customs officials at the port of New York to reliquidate the subject entry, utilizing a Brix value of 9.4 to determine the dutiable quantity of the imported juice.

Plaintiff claims that a Brix value of 9.4 "had been established and uniformly applied by the Bureau of Customs" to determine the dutiable quantity of concentrated lemon juice from December 26, 1950 until immediately prior to August 31, 1963, the effective date of TSUS. By reason of such established and uniform practice the plaintiff contends that the Brix value of 9.4 should have been applied to importations of juice entered after TSUS and prior to the establishment of the new Brix value of 8.9 on March 31, 1964. Therefore, plaintiff concludes that the utilization of a value of 8.9 in liquidating the entry herein was a "retroactive application" which, under the circumstances, was improper and illegal.

Plaintiff also urges that the rule making provisions of the Administrative Procedure Act (APA) in effect at that time (5 U.S.C. § 1003) were violated in that the notice of proposed rule making published in the Federal Register on November 2, 1963, proposed a Brix value of 9.4 for lemon juice whereas the regulation adopted in March 1964 established a value of 8.9.

Defendant, on its cross-motion, denies the existence of a uniform practice with respect to use of a Brix value of 9.4 in liquidating entries of concentrated lemon juice made during the 12½-year period preceding August 31, 1963. It contends that no finding of such an established and uniform practice had ever been made by the Secretary of the Treasury and that no regulation had ever been promulgated adopting that value.

The government also denies plaintiff's assertions as to the illegality of the regulation establishing a Brix value of 8.9 for lemon juice, asserting that it was adopted in conformity with the requirements of the APA and was properly applied in liquidating the entry at bar.

There is no dispute as to the statutes, regulations and other pertinent factual data relied upon by the parties and cited in their briefs or annexed as exhibits to

their respective motions. A summary of this material follows in order to place the issues in proper perspective.

Prior to the enactment of TSUS, imports of concentrated lemon juice were assessed for duty under paragraph 806(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, which provided as follows:

"806(b)   Concentrated juice of citrus fruits, fit for beverage purposes, and syrups containing any of the foregoing, all the foregoing, whether in liquid, powdered, or solid form:

\*       \*       \*       \*       \*       \*

Lemon, orange, and other (\* \* \*).... 35¢ per gal. on the quantity of unconcentrated natural fruit juice contained therein as shown by chemical analysis"

———◆———

The moving papers do not indicate the exact nature of the "chemical analysis" used prior to December 26, 1950 to determine the dutiable quantity of juice. However, a letter of that date from the Acting Commissioner of Customs to the collector at the port of Chicago, sent in response to his request for instructions for determining the proportion of the concentrated lemon juice to unconcentrated juice, directed him to use a method which was based on "the best current and authentic data on the composition of normal lemon juice now available \* \* \*". The letter then set out the values of the various constituents present in natural lemon juice, including "total soluble solids", fat or fat soluble materials, sugar, acid, minerals, the approximate pH, and Brix (as a measurement of total soluble solids by weight). The last named was given a value of 9.4.

The U. S. Customs Laboratory Method No. 806.1–54 (Tentative), dated December 2, 1954, which outlined the Customs Laboratory procedure for analyzing fruit juices and fruit syrups in order to obtain the percentages of alcohol, citric acid, soluble solids (Brix), specific gravity and ash present in the liquids, also utilized a Brix value of 9.4. It stated in a footnote that the Brix value was taken from the aforementioned Bureau letter of December 26, 1950.

In a letter dated January 30, 1968, which opposed passage of a private bill for the relief of plaintiff against the payment of additional duties on concentrated lemon juice based upon a Brix value of 8.9 instead of 9.4, the General Counsel of the Treasury advised the Chairman of the House Judiciary Committee that prior to August 31, 1963, a Brix value of 9.4, and acidity and ash content, were the factors employed in determining the dutiable quantity of such juice. The letter stated, in pertinent part:

"On March 31, 1964, the Secretary of the Treasury, under the authority of Schedule 1, Part 12A, Headnotes 3 and 4 of the Tariff Schedules of the

United States, determined that the average 'Brix value' of unconcentrated natural lemon juice in the trade and commerce of the United States was 8.-9. As a matter of law this finding was applicable to all entries made on and after August 31, 1963. A Brix value of 9.4 *was one factor used to determine the dutiable quantity of lemon juice before that date. Acidity and ash content were the other factors used to determine dutiable quantity.* In substance, the Secretary's action in determining that the 'Brix value' is 8.-9 provides a greater amount of duty on concentrated lemon juice than did the earlier 9.4 'Brix value.' All importations of concentrated lemon juice imported into the United States since August 31, 1963, have been dutiable upon the basis of the 8.9 'Brix value' determined by the Secretary." [Emphasis added.]

Two months after TSUS went into effect, the Commissioner of Customs issued a notice on October 22, 1963, directing the collectors of customs to withhold the liquidation of any entry covering fruit juice classifiable under schedule 1, part 12, subpart A of the tariff schedules which was entered on or after August 31, 1963, "pending promulgation of regulations establishing Brix values to be used in determining the number of gallons [of fruit juice] on which to assess the duty".

Under date of October 24, 1963, the Assistant Secretary of the Treasury, through the Commissioner of Customs, published in the Federal Register of November 2, 1963 a "notice of proposed rule making" pursuant to section 4 of the Administrative Procedure Act (5 U. S.C. § 1003), which stated, in pertinent part:

> "Notice is given pursuant to section 4 of the Administrative Procedure Act (5 U.S.C. 1003) that under the authority of section 624 of the Tariff Act of 1930 (19 U.S.C. 1624), and General Headnote 11 and headnote 3(b), subpart A, part 12, schedule 1, of the Tariff Schedules of the United States, it is proposed to amend part 13 of the Customs Regulations to prescibe the average Brix values determined by the Secretary in accordance with said headnote 3(b). The amendments *in tentative form* are set forth below. [Emphasis added.]
>
> \*     \*     \*     \*     \*     \*     \*     \*     \*     \*
>
> "§ 13.19  Brix values of unconcentrated natural fruit juices.
>
> "The following values have been determined to be the average brix values of unconcentrated natural fruit juices in the trade and commerce of the United States, for the purposes of the provisions of headnote 3, part 12A, schedule 1 of the Tariff Schedules of the United States, and will be used in determining the dutiable quantity of imports of concentrated fruit juices using the procedure set forth in headnote 4 of said part 12A:

| Kind of fruit juice | Average brix value (degrees) |
|---|---|
| \*     \*     \*     \*     \*     \*     \*     \*     \* | |
| Lemon | 9.4 |
| \*     \*     \*     \*     \*     \*     \*     \*     \* | |

> "Prior to the issuance of the proposed amendment, consideration will be given to any relevant data, views, or arguments which are submitted in writing to the Commissioner

of Customs, Bureau of Customs, Washington, D.C., 20224, and received not later than 30 days from the date of publication of this notice in the FEDERAL REGISTER. No hearing will be held."

---

Subsequently, the new rule of which plaintiff complains, prescribing average Brix values of natural unconcentrated fruit juices in the trade and commerce of the United States, including a value of 8.9 for lemon juice, was adopted by the Assistant Secretary of the Treasury through the Commissioner of Customs on March 23, 1964. As already noted, it was published in the Federal Register eight days later. The published notice also stated—

"After consideration of all relevant data submitted in response to the notice, * * * revised values have been adopted for lemon and orange juices.

\* \* \* \* \* \*

"*Effective date.* Inasmuch as promulgation of the Brix values set forth in this amendment is required by statuts (Sec. 101, 76 Stat. 72; Sch. 1, pt. 12A, headnote 3, Tariff Schedules of the United States), and no liquidations of entries of the involved commodities can be made until the foregoing amendments are made effective, good cause is found for making the amendments effective in less than 30 days after publication in the FEDERAL REGISTER, and the foregoing amendments shall become effective

upon publication in the FEDERAL REGISTER."

It is against this setting that plaintiff urges that a Brix value of 9.4 should have been applied in liquidating the instant entry. However, plaintiff has expressly refrained from claiming that there had been a "finding" of an "established and uniform practice" by the Secretary of the Treasury pursuant to section 315(d) of the Tariff Act of 1930,[2] as modified, or that the regulation of March 1964 which, in effect, resulted in the imposition of higher duties on concentrated lemon and orange juices, required 30 days' notice under that section. In fact, plaintiff concedes that "section 315(d) is not germane to the issue in any way", asserting that its "only claim * * * for the determination of a Brix value of 9.4 is that *such determination was in effect immediately prior to TSUS and it had been in effect for a long time.*" [Emphasis in original.]

Plaintiff maintains that the existence of such practice brings into play the "well settled principle in Customs law" that an administrative practice based on regulations promulgated by the Secretary of the Treasury, pursuant to the general authority conferred upon him by

---

**2.** Section 315(d) (19 U.S.C. § 1315(d)) provides:

"(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall

not apply with respect to the imposition of anti-dumping duties."

For construction of the notice-of-change requirement under section 315(d), see Asiatic Petroleum Corp. v. United States, 59 CCPA 20, C.A.D. 1029 (1971); Washington Handle Co. v. United States, 34 CCPA 80, C.A.D. 346 (1946); Martin Brokerage Company v. United States, 36 Cust.Ct. 35, C.D. 1750 (1956). See also Customs Regulation section 16.10(a) (19 C.F.R. 16, 10(a)) requiring 90 days' notice where there is a change in an established and uniform practice at the various ports resulting in a higher rate of duty.

section 624 of the Tariff Act of 1930 (19 U.S.C. § 1624),[3] continues in effect and must be utilized under the new tariff schedules until the Secretary of the Treasury establishes a new practice. Thus, plaintiff concludes, and cites Ciba Co. v. United States, 23 CCPA 355, T.D. 48210 (1936), as authority for the proposition that the Brix value of 9.4 established under the earlier tariff classification schedules carried over into TSUS with respect to all entries of concentrated lemon juice made prior to March 31, 1964, when the ruling as to a Brix value of 8.9 became effective.

Plaintiff's reliance upon Ciba[4] is misplaced. The Ciba case is not only inapposite to the theory expounded by plaintiff, but is based upon United States v. McGraw Wool Co., 19 CCPA 205, T.D. 45296 (1931), which stands for and, indeed, compels a conclusion contrary to that urged in plaintiff's motion.

The court held, in Ciba, that certain standards of strength established by the Secretary of the Treasury pursuant to the Tariff Act of 1922 and used for determining the dutiable weight of coal tar dyes under that act, were, in the absence of the promulgation of new dye standards authorized by the Tariff Act of 1930 and, under the particular "circumstances" enumerated by the court, applicable to importations of coal tar dyes under the 1930 Act.

The circumstances cited by the court included a notice sent to all collectors of customs by the Secretary of the Treasury advising them that when the new act became effective, the Treasury Department would issue instructions *"continuing existing regulations wherever applicable* and would prescribe such further regulations as were required." Also, the day before the 1930 Act went into effect the collectors were advised that "[e]xisting regulations *including dye standards * * * [are] extended so far as applicable* pending further instructions." [Emphasis added.] 23 CCPA at 358.

In finding that the foregoing instructions warranted the application by the collector of dye standards promulgated under the 1922 Act to importations under the Tariff Act of 1930, the court quoted the following from the *McGraw Wool* case:[5]

"It is true that a regulation of the Secretary of the Treasury, duly promulgated in pursuance of the authority given to the Secretary in a tariff act by Congress, will continue in operative force and effect, in the absence of any order of the Secretary repealing or modifying the same, or, in the absence of a new regulation in lieu thereof, after a new tariff act containing a like power to make regulations has been enacted and has become effective. This, however, is not because of any continuing vitality of the regulation itself, but is because it is assumed that the Secretary, *by the absence of action on his part,* has assented to and repromulgated the former regulation for the time being. *The moment he acts, however, under the new tariff act such new action constitutes his regulation and the former one becomes, by that act, abrogated.* [Emphasis added.]

"Let us assume that the Secretary duly promulgated a regulation con-

3. Section 624 provides that—
   "In addition to the specific powers conferred by this chapter the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this chapter."

4. Assiduous research fails to disclose any reference to Ciba in later cases for the so-called "well settled principle" asserted by plaintiff or, for that matter, any other proposition.

5. In *McGraw Wool*, the Secretary of the Treasury had established a new method of ascertaining the dutiable weight of clean wool pursuant to the directive of the Tariff Act of 1930 authorizing him to establish regulations for carrying out the provisions of the wool schedule. This regulation, challenged by plaintiff, was upheld by the court as abrogating the regulation promulgated under the earlier act and as being within the Secretary's discretion.

cerning the dutiable weight of wool, by virtue of his authority under the Tariff Act of 1922. Assume, further, that the Tariff Act of 1930 contained no provision authorizing the Secretary to make any such regulation. It must be conceded in such case that when the Tariff Act of 1930 became effective, *eo instanti* the said former regulation became of no force and effect. The authority being withheld, and the former act being repealed, no further authority existed, and the regulation was a nullity". 19 CCPA at 209–210.

■ It is patent that the circumstances prevailing in the case at bar are just the opposite of those in *Ciba*. Even assuming the existence of the established practice claimed by plaintiff, i. e., use of a Brix value of 9.4 to determine the dutiable quantity of concentrated lemon juice, it is clearly evident that there was neither an intent to retain that standard or practice under the new schedules, as in *Ciba*, nor the administrative inaction described in *McGraw Wool* from which it could be "assumed" that the Secretary of the Treasury had "assented to and repromulgated the former" practice for the time being. Indeed, the instructions of October 22, 1963, issued less than two months after TSUS went into effect, which suspended liquidations of all entries covering fruit juices classifiable under schedule 1, part 12, subpart A of TSUS until new regulations establishing Brix values were issued, unmistakably set forth the intent of the Bureau to abrogate all prior practices with respect to Brix values and to establish new ones. Accordingly, the court finds no warrant for retention under the new revised tariff schedules of a standard that had been expressly nullified.

Furthermore, the so-called practice allegedly followed under the 1930 Act is not the same as that now mandated un-

der TSUS for determination of the dutiable quantity of concentrated fruit juice. Paragraph 806(b) assessed duty on the "quantity of unconcentrated natural fruit juice contained * * * [in such concentrated juice or syrup] as shown by chemical analysis", without establishing any standards for such analysis. All of the government documents relied upon by plaintiff and cited hereinabove, specifically, the Acting Commissioner's letter of December 26, 1950, the Customs Laboratory method dated December 2, 1954, and the General Counsel's letter of January 30, 1968, indicate that the Bureau of Customs used several factors, only one of which was concerned with Brix value, to determine the dutiable quantity of lemon juice. It may also be noted that acidity and mineral ash content were equally important in making that determination.[6]

TSUS, however, applies a different standard, basing the dutiable quantity on the "reconstituted juice" obtained by—

" * * * mixing the imported concentrate with water in such proportion that the product will have a Brix value equal to that found by the Secretary of the Treasury from time to time to be the average Brix value of like natural unconcentrated juice in the trade and commerce of the United States; * * * "

■ In view of the fact that the procedure required under TSUS differs markedly from that followed under paragraph 806(b), it is irrelevant to the liquidation of the entry at bar whether the preceding practice had been uniformly applied. When the revised tariff schedules (TSUS) went into effect, that former practice *eo instanti* became a nullity in its entirety. United States v. McGraw Wool Co., 19 CCPA 205, T.D. 45296 (1931).

■ Plaintiff contends that, even if legally adopted, the Brix value of 8.9

---

6. Although plaintiff cites no regulations promulgating such practice, it will be conceded for the purposes of its motion that the procedure described in the letter of Decem-

ber 26, 1950, and the cited 1954 laboratory method for determining the dutiable quantity of concentrated lemon juice were uniformly followed until August 31, 1963.

was improperly applied "retroactively" to the subject entry. The court cannot agree that there was a "retroactive" application in the instant case. The merchandise herein was subject to assessment based on a Brix value of like natural unconcentrated juice found by the Secretary of the Treasury "from time to time". As none had been found, the entry could not be liquidated until such determination was made. Therefore, the instruction to withhold liquidations until the new Brix values were determined, as required by the statute, was entirely reasonable and appropriate.

Plaintiff's insistence that the validity of the use of the new Brix value of 8.9 depended upon its promulgation prior to the date of entry of the merchandise is unrealistic. This requirement would have imposed an insuperable burden upon the Secretary in view of the many complications and difficulties usually attending the administration of a new statute. Under the circumstances, the court does not find that there was an unreasonable delay in establishing new Brix values.

■ The suspension of liquidations pending receipt of advice or instructions is a well known practice of long standing. Indeed, it was followed over 60 years ago in Pacific Creosoting Co. v. United States, 23 Treas.Dec. 63, T.D. 32746, 196 F. 35 (9th Cir. 1912), where the collector suspended liquidation of the subject entries while awaiting advice from the Secretary of the Treasury. That practice was not disapproved by the circuit court therein, which stated, quoting from Abner Doble Co. v. United States, 119 F. 152, 153 (9th Cir. 1902), "The law does not prescribe the time when the collector shall liquidate the duties." See also United States v. De Rivera, 73 F. 679 (S.D.N.Y.1896).

Indeed, in Naumes Forwarding Service v. United States, 42 CCPA 110, C.A.D. 581 (1955), a case upon which plaintiff relies to support its claim that a Brix value of 9.4 for lemon juice had been utilized from December 1950 until the inception of TSUS, this very practice, labeled as "illegal" and "retroactive" by plaintiff herein, was followed and implicitly approved by the court, although not raised as a separate issue. In the Naumes case, the collector at the port of Chicago had followed the procedures recommended in the aforecited Bureau letter of December 26, 1950 (including utilization of a Brix value of 9.-4) in liquidating entries of concentrated lemon juice entered prior thereto, i. e., between February and July of 1950. This resulted in the assessment of duties higher than were imposed on shipments of such juice the previous year. The appellate court affirmed the trial court's holding overruling the protests on the ground that plaintiff had failed to show the existence of an established and uniform practice.

■ Another major consideration herein is the general presumption of regularity that attaches to all administrative action. In the absence of clear evidence to the contrary, the courts presume that public officers have properly discharged their duties and will not disturb the action taken. United States v. Chemical Foundation, 272 U.S. 1, 47 S. Ct. 1, 71 L.Ed. 131 (1926); Reed v. Franke, 297 F.2d 17 (4th Cir. 1961); Frasier v. Finch, 313 F.Supp. 160 (D.C. Ala.1970), aff'd, Frasier v. Richardson, 434 F.2d 597 (5th Cir. 1970). This presumption, of course, also attaches to the official actions taken by customs officers. United States v. Getz Bros. & Co., 55 CCPA 90, C.A.D. 938 (1968); Olavarria & Co., Inc. v. United States, 47 CCPA 65, C.A.D. 729 (1960); United States v. Henry W. Peabody & Co. v. United States, 40 CCPA 59, C.A.D. 498 (1952). Indeed, the presumption is now statutory. See Kobata et al. v. United States, 66 Cust.Ct. 341, 344, C.D. 4213, 326 F.Supp. 1397, 1399 (1971).

■ As indicated elsewhere, the courts have been loath to disturb the administrative acts and rulings of responsible officials who possess a special knowledge and competence in particular areas of government. John V. Carr &

Son, Inc. v. United States, 69 Cust.Ct. 78, C.D. 4377, 347 F.Supp. 1390 (1972). See also Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). Certainly the court is not convinced that plaintiff has met its burden of establishing that the officers charged with administering the Tariff Classification Act of 1962 have acted unreasonably.[7]

█ Even if the regulation of March 31, 1964 were considered as having a retroactive effect when applied to entries of an earlier date, that fact does not necessarily render it invalid. Mr. Justice Murphy stated, in Securities and Exchange Commission v. Chenery Corporation, 332 U.S. 194, 203, 67 S.Ct. 1575, 1581, 91 L.Ed. 1995 (1947):

"Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency. But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law. See Addison v. Holly Hill Co., 322 U.S. 607, 620, 64 S.Ct. 1215, 88 L.Ed. 1488."

Therefore, a change of an administrative standard may be applied retroactively unless it will work upon the party affected by it a hardship that is out of proportion to the public ends to be accomplished. National Labor Relations Board v. E & B Brewing Company, 276

F.2d 594 (6th Cir. 1960), cert. denied, 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234 (1961); Sun Oil Company v. Federal Power Commission, 256 F.2d 233 (5th Cir. 1958), cert. denied, 358 U.S. 872, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958); National Labor Relations Board v. Guy F. Atkinson Co., 195 F.2d 141 (9th Cir. 1952).

In Joseph v. Federal Communications Commission, 131 U.S.App.D.C. 207, 404 F.2d 207, 212 (1968), the court observed that the power of an agency to change its standards prospectively "is not in derogation of its duty to change them retrospectively when that better furthers the overall public interest."

█ Accordingly, the court finds that the carrying out of the statutory requirements not only served the public interest, but far outweighed the financial disappointment suffered by plaintiff which expected to pay lower duties on the imported juice. Expectations, however, do not give rise to a vested interest especially if they pertain to the importation of merchandise. It is a fundamental principal under our Constitution that "no individual has a vested right to trade with foreign nations which is so broad in character as to limit and restrict the power of Congress to determine what articles of merchandise may be imported into this country and the terms upon which a right to import may be exercised". Buttfield v. Stranahan, 192 U.S. 470, 493, 24 S.Ct. 349, 354, 48 L.Ed. 525 (1904). Thus, an importer cannot complain of import regulations which are within constitutional limitations. In Re Orion Co., 22 CCPA 149, T.D. 47123, 71 F.2d 458 (1934); Dart Export Corp. et al. v. United States, 43

---

7. With respect to the Commissioner's power to order suspension of liquidations, his acts are deemed to have been duly authorized by the Secretary of the Treasury who may, under section 2 of the 1950 Reorganization Plan No. 26 (15 F.R. 4935, 64 Stat. 1280)— " * * * from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of the Treasury of any function of the Secretary, including any function transferred to the Secretary by the provisions of this reorganization plan." See also 19 U.S.C. § 2072(c) as amended by Act, September 3, 1954, c. 1263, § 9, 68 Stat. 1228, 1229, which provides that— "The personnel of the Bureau of Customs shall perform such duties as the Secretary of the Treasury may prescribe."

CCPA 64, C.A.D. 610 (1956), cert. denied, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed. 2d 48 (1956); S. J. Charia & Co. v. United States, 33 Cust.Ct. 107, C.D. 1642 (1954), aff'd, 43 CCPA 147, C.A.D. 622 (1956).

■ Citing its financial loss, plaintiff urges this court to give heed to equitable considerations, asserting that under the Customs Courts Act of 1970, and the rules promulgated pursuant thereto, "this Court may do equity where that is the remedy indicated." The argument is reminiscent of a plea for the invocation or reinstatement of the ancient English doctrine of construing a statute according to its equity. See 1 Blackstone, Commentaries 61 (1st ed. 1765); 1 Coke, Institutes 24b (15th ed. 1794); 2 Plowden 465 (1761). The doctrine served a beneficial purpose when the early acts of parliament were sketchy and couched in general terms. The generality of these early enactments, and a vagueness between the judicial and legislative functions, justified the creation by the courts of the doctrine of the equity of the statute. Legislation, however, has made great strides since the days of Blackstone and Plowden. In construing a statutory enactment, in an area clearly within the province of the legislature, it is the function of the judiciary to give effect to the legislative will.

Liberality of construction, designed to effectuate the legislative purpose, cannot be invoked to confer a power not granted. Plaintiff seems to assert that since plaintiff has been adversely affected, this court must fashion some appropriate remedy and afford relief. Plaintiff's contention, on this aspect of the case, calls to mind the words of Mr. Justice Frankfurter, who, in dissent, cautioned that one ought not "imply that the protection of legal interests is entrusted solely to the courts." Mr. Justice Frankfurter dissenting in Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 446, 62 S.Ct. 1194, 1213, 86 L.Ed. 1563 (1942).[8] More recently, as specifically applicable to customs law, see Matsushita Electric Industrial Company, Ltd., et al. v. The United States Treasury Department et al. 67 Cust.Ct. 328, C.D. 4292 (1971), aff'd, 60 CCPA ——, C.A.D. 1086 (1973).

■ The APA provisions governing rule making which were in effect during 1963–1964 (5 U.S.C. § 1003(a) and (b)), required the notice of the proposed rule published in the Federal Register to include, among other matters, "either the terms or substance of the proposed rule or a description of the subjects and issues involved." They also directed the agency to "afford interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity to present the same orally in any manner".

The notice here in question amply describes the subject and pertinent issues. Also, the fact that two of the proposed Brix values were revised did not invalidate the procedure followed. All interested parties had sufficient notice of what was under consideration, and were given an opportunity to present their views. Moreover, they were put on notice that the proposed values were only "*in tentative* form." Thus, the court finds no basis for plaintiff's statement that the notice "permitted only the assumption that the proposed Brix value of 9.4 would be continued".·

Indeed, if such were the case, the statement in the notice that "consideration will be given to any relevant data,

8. The views expressed here do not conflict with those of Mr. Justice Douglas where, in a concurring opinion in Flast v. Cohen, 392 U.S. 83, 111, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), he stated: "The judiciary is an indispensable part of the operation of our federal system. With the growing complexities of government it is often the one and only place where effective relief can be obtained. If the judiciary were to become a super-legislative group sitting in judgment on the affairs of people, the situation would be intolerable. But where wrongs to individuals are done by violation of specific guarantees, it is abdication for courts to close their doors."

views, or arguments which are submitted in writing to the Commissioner of Customs" would have been a sham and the entire proceeding would have constituted an abuse of the rule making process. There is no basis for ascribing any such intent either to the Commissioner, or to the Secretary of the Treasury.

In view of the foregoing, it is the decision of the court that the rule establishing a Brix value of 8.9 was validly promulgated and properly applied upon liquidation of the entry herein to determine the dutiable quantity of imported juice.

Plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

An order will issue accordingly.

## ORDER

Upon reading and filing plaintiff's motion for summary judgment, and defendant's cross-motion for summary judgment, herein, and upon all other pleadings, papers and proceedings herein, it is hereby

Ordered that plaintiff's motion for summary judgment be, and hereby is denied, and it is further

Ordered that defendant's cross-motion for summary judgment be, and hereby is granted, and it is further

Ordered that judgment be entered overruling the protest and sustaining the classification of the subject merchandise herein.

