The BEST FOODS, Inc.

v.

UNITED STATES.

C. D. 1791; Protest Nos. 265822–K, 265823–K.

United States Customs Court,
Third Division.
June 26, 1956.

Sullivan & Cromwell, New York City (John F. Dooling, Jr., New York City, and Marvin S. Sloman, Dallas, Tex., of counsel), Davis & Gilbert, New York City (Joshua Levine, New York City, of counsel), Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), associate counsel, for plaintiff.

George Cochran Doub, Asst. Atty. Gen. (Dorothy C. Bennett, trial attorney), New York City, for defendant.

Before EKWALL, JOHNSON, and DONLON, Judges.

DONLON, Judge.

The first question before us is whether plaintiff has chosen the right forum in which to litigate the issues raised in its protests. Defendant, on motion to dismiss the protests, argues that this court has been ousted, by statutory fiat, from jurisdiction in this proceeding.

Plaintiff's protests challenge an exaction by the collector of customs for the port of New York at the rate of 2 cents per pound, levied on 219,973 pounds of shelled peanuts that were imported on April 19, 1955. The relief sought is recovery of the sum exacted.

This exaction, denominated as a fee, was levied pursuant to a Presidential Proclamation, No. 3084, of March 9, 1955, T.D. 53755, U.S.Code Cong. and Adm.News 1955, p. 991, authority for which purportedly rests in section 22 of the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 624. In addition to this fee at the rate of 2 cents per pound, plaintiff also paid regular duties at the rate of 7 cents per pound under the Tariff Act of 1930, paragraph 759, 19 U.S.C.A. § 1001. The protests raise no issue as to the regular duties.

The official entry papers, including the collector's letter of transmittal, were admitted in evidence. Defendant then moved to dismiss the protests. Defendant has other grounds on which its motion also rests, which we shall consider later, but its argument chiefly rests on the issue of jurisdiction. This we shall take up first. If this court lacks jurisdiction, as the defendant argues, it is stating the obvious to observe that our consideration of other issues would be inappropriate and futile.

The statute on which defendant's principal argument relies is the Revenue Act of 1936, Public Law 740, 49 Stat. 1648, 7 U.S.C.A. § 644 et seq. In title VII of the Revenue Act of 1936, section 905 provides as follows:

"Concurrent with the Court of Claims, the District Courts of the United States (except as provided in

section 906 of this title) shall have jurisdiction of *cases to which this title applies,* regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for limitations under the Judicial Code, as amended, on jurisdiction of such courts based upon the amount in controversy. *The United States Customs Court shall not have jurisdiction of any such cases."* [Emphasis supplied.]

■ What did Congress intend by the words "any such cases," as those words are used in the final sentence of section 905? Is this such a case? It is evident that the words refer back to earlier language in the same section, namely, "cases to which *this title* applies." [Emphasis supplied.]

A parenthetical exception is provided in section 905. This relates to section 906. The latter section establishes an elaborate review and refund procedure for processing taxes. The fee exacted, for which recovery is here sought, is not a processing tax. We may, therefore, ignore the exception in section 905, concentrating attention on the meaning which the Congress intended to give to the words "cases to which this title applies," other than cases for the review and refund of processing taxes.

■ Title VII of the Revenue Act of 1936 is "this title," as those words are used in section 905 thereof, supra. Sections 902, 903, and 904, immediately preceding section 905 and likewise a part of title VII, enumerate the cases that are meant. In various terms, these three sections of title VII of the Revenue Act of 1936 comprehend cases in which the relief sought is refund of amounts paid "as tax under the Agricultural Adjustment Act."

Section 913, also a part of title VII of the Revenue Act of 1936, states definitions which the Congress provided for guidance to the intended significance of certain terms. "Tax," as used in title VII of the Revenue Act of 1936, is defined as a tax, or an exaction that is denominated a "tax," under the Agricultural Adjustment Act. The term "Agricultural Adjustment Act" is defined for purposes of title VII. That definition, stated in subdivision (f) of section 913, is as follows:

"When used *in this title*—

\* \* \* \* \*

"(f) The term 'Agricultural Adjustment Act' means the Agricultural Adjustment Act as originally enacted and the amendments thereto adopted *prior to January 6, 1936."* [Emphasis supplied.]

Jurisdiction of this court, then, was excluded by the clear mandate of section 905 in those cases in which the relief sought was refund of a tax, or of an exaction denominated as a "tax," under the Agricultural Adjustment Act, as that act was originally enacted in 1933 and as it was amended before January 6, 1936. That day was the day when the Supreme Court handed down its decision holding the Agricultural Adjustment Act unconstitutional. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477.

■ Much of defendant's argument rests on language that has been quoted from the United States Code, rather than from the law itself. The Code establishes *prima facie* what the laws of the United States are. It is so provided in section 204, title 1, of the Code. Section 112, title 1, of the Code provides, however, that the United States Statutes at Large "shall be legal evidence of laws \* \* \* in all the courts of the United States \* \* \*." The Supreme Court stated the rule, in cases of apparent inconsistency between the language of the statute and of the Code, as follows, in Stephan v. United States, 319 U.S. 423, at page 426, 63 S.Ct. 1135, at page 1137, 87 L.Ed. 1490:

"\* \* \* The fact that the words of 18 U.S.C. § 681 have lingered on in the successive editions of the United States Code is immaterial. By 1 U.S.C. § 54(a), 1 U.S.C.A. § 54(a) the Code establishes

'prima facie' the laws of the United States. But the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent."

To the extent that provisions of the Code, cited to us by defendant, are inconsistent with the Statutes at Large, the latter will prevail. To obviate confusion, we have cited the appropriate sections of the Statutes at Large, rather than sections of the Code. However, it is relevant to note that the provisions of the Code which are pertinent to our decision also support our opinion.

An illustration is section 655, United States Code, title 7, "Agriculture," the statutory source of which is section 913, chapter 690, 49 Stat. 1754, which is section 913, title VII, Revenue Act of 1936, supra. Whatever liberties the codifiers may have taken with the statutory language, they, nevertheless, carefully preserved the basic statutory limitation intended by the Congress as to the cases for which the special refund and review procedures and special jurisdiction provisions of title VII of the Revenue Act of 1936 had been enacted. The following comparison of statutory and code sections is revealing:

| [Section 913, Revenue Act of 1936, 49 Stat. 1754]: | [7 U.S.C. § 655, 1952 edition]: |
|---|---|
| "When used in this title— | "When used in sections 644-659 of this title— |
| "(a) The term 'tax' means a tax or exaction denominated a 'tax' under the Agricultural Adjustment Act, and shall include any penalty, addition to tax, additional tax, or interest applicable to such tax. | "(a) The term 'tax' means a tax or exaction denominated a 'tax' under sections 601-608, 608a, 608b, 608c, 608d-612, 613, 614-619, 620, 623, and 624 of this title, and shall include any penalty, addition to tax, additional tax, or interest applicable to such tax. |
| * * * * | * * * * |
| "(f) The term 'Agricultural Adjustment Act' means the Agricultural Adjustment Act as originally enacted and the amendments thereto adopted prior to January 6, 1936." | "(f) The term 'Agricultural Adjustment Act' means the Agricultural Adjustment Act as originally enacted and the amendments thereto adopted prior to January 6, 1936. (June 22, 1936, 9:00 p. m., ch. 690, § 913, 49 Stat. 1754.)" |

The Code related the words "this title," in section 655, to the Code title "Agriculture," and defines tax in relation to enumerated sections of that title, of which chapter 26 is entitled "Agricultural Adjustment." In reality, of course, the Statutes at Large show the true statutory meaning of the word "title," as used in section 655, to be title VII of the Internal Revenue Act of 1936, in which special refund and review procedures were enacted after the Agricultural Adjustment Act had been held unconstitutional. Nevertheless, as to what claims for refund are intended, the meaning was preserved by the codifiers, namely, that the special provision cited as section 647 of the Code, section 905 of the statute, supra, had to do only with claims for refund of "a tax or exaction denominated a 'tax'" under the Agriculture Adjustment Act, as it was originally enacted in 1933 or as it was amended prior to January 6, 1936.

The protest before us seeks refund of an exaction that is denominated a "fee" under the Agricultural Marketing Act of 1937, as amended in 1940 and 1948. There was no provision for this or for any similar "fee" in the original Agricultural Adjustment Act or in any amendment adopted prior to January 6, 1936. Indeed, no assertion has been made that this "fee" rests on any congressional enactment found in any law prior to 1940.

Our opinion finds support in the legislative and judicial history of the Agricultural Adjustment Act. The purpose of the original legislation was twofold: To limit production of certain agricultural products that were in surplus supply and to impose taxes. It is not necessary here to recount the course of litigation which culminated in the decision of the Supreme Court in the Butler case, supra, holding that, in enacting the Agricultural Adjustment Act of 1933, the Congress exceeded its constitutional powers. Many millions in taxes had already, before this decision was handed down on January 6, 1936, been exacted from hundreds of thousands of taxpay-

ers. Under existing statutes, many of these taxpayers had, in one way or another, rights to claim refund and to file suits to recover the taxes that had been unconstitutionally exacted. Some of these litigants might have brought their litigation into this court.

To stem the tide of threatened litigation and to hedge about with new restrictions refunds of these taxes, title VII of the Revenue Act of 1936 was enacted. By appropriate language, the Congress made its intention clear, both as to the extent of that enactment and the limitations on it. The newly imposed restrictions on refund claims were to apply only to certain taxes. They were not to apply to any exaction that was not a tax or denominated a "tax." They were not even to apply to a tax or an exaction denominated a tax, if it was levied or exacted under legislation outside the Agricultural Adjustment Act. These restrictions, indeed, were not to apply unless the tax or exaction denominated a tax was levied under a provision of the Agricultural Adjustment Act, as it was originally enacted or as it was amended prior to January 6, 1936.

Although legislative authority for the fee with respect to which these protests are filed is sometimes referred to as section 22 of the Agricultural Adjustment Act, as amended, it seems clear that the basic statute is, in reality, the Agricultural Marketing Agreement Act of 1937, under which designation the Congress reenacted what had been section 22 of the unconstitutional Agricultural Adjustment Act of 1933. The purpose of the Congress was stated in the preamble to the Agricultural Marketing Act of 1937 as follows:

> "*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the following provisions of the Agricultural Adjustment Act, as amended, not having been intended for the control of the production of agricultural commodities, and having been intended to be effective irrespective of the

validity of any other provision of that Act are expressly affirmed and validated, and are reenacted without change except as provided in section 2:" [Emphasis quoted.] 50 Stat. 246.

As enacted in 1937, section 22 contained no provision for any tax or fee. It then had to do solely with quantitative limitations that might be laid on imports of specified agricultural commodities. It was not until 1940, 54 Stat. 17, that provision for a "fee" was first incorporated into so-called section 22.

■ That the Congress, in 1940, intended this new "fee" to be regarded without limitation as a duty, with all the consequences that flow from that status, is clear from the language used. Chapter 13 of the Public Laws enacted by the 76th Congress, approved January 25, 1940, 54 Stat. 17, provided:

> "That section 22 of the Agricultural Adjustment Act of 1933, as amended, and as reenacted by section 1(k) of the Agricultural Marketing Agreement Act of 1937, as amended, is amended by * * * amending subsection (c) to read as follows: 'The fees * * * which shall not be in excess of 50 per centum ad valorem, shall be treated for the purposes of all provisions of law relating to customs revenue as duties imposed by the Tariff Act of 1930.'"

In 1948, 62 Stat. 1248, the Congress amended subsection (c) of section 22. The status of "fees," specified in the 1940 enactment as duties generally "for the purposes of all provisions of law relating to customs revenue," was modified. As amended in 1948, section 22 now contains the following language:

> " * * * such fees shall be treated for administrative purposes and for the purposes of section 32 of Public Law Numbered 320, Seventy-fourth Congress, approved August 24, 1935, as amended, as duties imposed by the Tariff Act of 1930, but such fees shall not be considered as

duties for the purpose of granting any preferential concession under any international obligation of the United States."

Section 32, Public Law 320, of the 74th Congress, 49 Stat. 750, 774, 7 U.S.C.A. § 612c, appropriated annually to the Department of Agriculture for each fiscal year "an amount equal to 30 per centum of the gross receipts from duties collected under the customs laws * * *." For that purpose, the fees exacted under section 22 continued, after the 1948 amendment, to rate as duties.

However, such "fees" were not, after the effective date of the 1948 enactment, to be considered any longer as duties for the purpose of granting preferential concessions under "any international obligation of the United States."

The congressional report on this legislation, in the bill stage, illuminates the congressional intent. House Report 1776 (80th Congress, 2d session) contains the following:

"The principal changes contemplated by this section (i. e., revision of section 22) of the bill are:

\* \* \* \* \* \*

"(5) To clarify the definition with respect to the fees authorized, which are considered duties for some purposes, as now provided, so that they shall not be considered as duties for the purpose of granting any preferential concession under any international obligation of the United States, as, for example, our duty preference arrangements with Cuba. \* \* \*" (Parenthetical explanation inserted for clarity.)

We are of opinion that the exaction which is the subject of the instant protests, a "fee" on imported merchandise levied by purported authority of section 22 of the Agricultural Adjustment Act, under statutes enacted in 1940 and 1948, was intended by the Congress to be considered as a customs duty for the purpose of conferring jurisdiction in this court to hear and determine these protests.

The Congress expressly contemplates, in connection with this "fee," first legislatively authorized in 1940, the usual administrative customs procedure, namely, entry, examination, appraisement, liquidation, protest, and filing of such protest by the collector with this court, all administrative procedures usual in customs cases and also possible administrative reliquidation by the collector on the order of this court. No other administrative procedures are suggested. Under such circumstances, clear evidence of intent to oust this court of the jurisdiction that is generally conferred on it in customs cases would be necessary in order to support the exclusion of jurisdiction for which the defendant argues. In view of the broad grant of customs jurisdiction to this court, ouster of that jurisdiction will not be inferred, except on evidence of congressional intention to effect such ouster.

When the Congress intended to oust this court of jurisdiction, as it did in the Revenue Act of 1936, it used language that clearly expressed that intention. A like intention, either to foreclose taxpayers from any relief with respect to fees claimed to be unlawfully collected as duties, or to prescribe for such relief a procedure different from that usual in other customs cases, will not be inferred from the language of the 1948 amendment to section 22 of the Agricultural Adjustment Act. The limited congressional intention in enacting that amendment was clearly stated in the House report, supra. It is stated in the same way in the statute itself. We find nothing to suggest that the Congress intended by that enactment, in 1948, any new limitation other than the one that was expressly stated and to which the House report refers, namely, that such "fees * * * shall not be considered as duties for the purpose of granting any preferential concession under any international obligation of the United States." The fact that this Government had then recently become party to the General Agreement on Tariffs and Trade (GATT), T.D. 51802, 61 Stat. A3, is his-

torically significant. GATT is such an international obligation as the 1948 House report intends.

The express language of the statute, title VII of the Revenue Act of 1936, does not apply in this case, because of the clear limitation on the ouster of jurisdiction that was effected by that statute. This is not a case to which title VII of the Revenue Act of 1936 applies.

The effect of the 1940 statute was to confer jurisdiction in this court to hear and determine litigation initiated by a protest against a "fee" exacted pursuant to section 22 of the Agricultural Adjustment Act.

We are of opinion that the amendment to section 22, enacted in 1948, did not take away this jurisdiction.

▆▆▆ The defendant's motion to dismiss the protests rests on one other argument as to both protests, and a third argument that is directed to one only of the two protests.

Defendant argues that both protests should be dismissed, because they seek review of a Presidential decision as to facts, and that a Presidential decision is not subject to judicial review in this or any other court. Defendant's brief limits this phase of its motion to that part of the plaintiff's protests which allege that the fee imposed, and here questioned, was calculated to result, and did result, in the establishment and maintenance of domestic peanut prices above the parity level provided in the Agricultural Adjustment Act, in violation of sections 2 and 22 of the Agricultural Adjustment Act, as amended. In support of this basis for its motion to dismiss, defendant cites section 22(e) of the Agricultural Adjustment Act, as amended, which provides that "Any decision of the President as to facts under this section shall be final."

Defendant's motion to dismiss the protests is not, in this respect, well taken. This allegation of the protests is not the sole issue raised in plaintiff's protests. Without passing on the merits of this

objection, it is enough now to say that to grant defendant's motion to dismiss the protests, because of an objection to only one allegation, would have the effect of precluding plaintiff from producing proofs on issues that do not, in any sense, constitute review of Presidential findings of fact. The motion to dismiss on this ground does not correctly attack whatever problem there is, and it should be denied.

[11] Finally, defendant moves to dismiss protest 265822–K as prematurely filed. This protest was filed within 60 days after payment of duties, including the protested fee, but before the entry was liquidated.

Section 514 of the Tariff Act of 1930, 19 U.S.C.A. § 1514, provides that a protest shall be filed within 60 days after, but not before, "liquidation, reliquidation, decision, or refusal * * *." Plaintiff contends that its protest 265822–K is directed against the decision of the collector to assess the fee. Since the protest was filed within 60 days after the collector's decision, plaintiff argues that the protest is both permissible and timely.

Substantially the same question came before our appeals court in Faber, Coe & Gregg v. United States, 1931, 19 C.C.P.A., Customs, 8, T.D. 44851. The collector of customs computed the amount of tax, and the importer purchased from the collector of internal revenue certain revenue stamps in payment of a tax under the Revenue Act of 1926. The stamps were then affixed to the imported merchandise and canceled by customs officials while the merchandise was still in customs custody. The importer filed two protests: The first, within 60 days after the purchase of the revenue stamps and prior to liquidation; and the second, within 60 days after the liquidation of the entry. Each of the protests claimed a reduction of 20 per centum in internal revenue tax under the preference provisions of a treaty with Cuba. Nothing in the protests was directed against regular customs duties assessed on the merchandise.

The Government moved in that case, as here, to dismiss the first protest on the ground that it was prematurely filed. Our appeals court affirmed the decision of this court dismissing that protest as premature.

"Regardless of how taxes may be designated by the Congress, if they are imposed on imports while in customs custody, they are essentially customs duties and are determinable and collectible as prescribed by law. * * * 19 C.C.P.A., Customs, at page 12.

"Protest 276973–G, filed prior to liquidation, related to the rate and amount of duties chargeable against the imported merchandise. Such questions can be raised by protest after, but not before, liquidation. Accordingly, the court below was right in dismissing this protest as premature. * * *" 19 C.C.P.A., Customs, at page 14.

In United States v. B. Holman, Inc., 1941, 29 C.C.P.A., Customs, 3, C.A.D. 164, discussed by plaintiff in its brief (and cited with approval in Dart Export Corp. v. United States, 43 C.C.P.A., Customs, 64, our appeals court said, 29 C.C.P.A., Customs, at page 14:

" * * * all decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, so far as the issues here are concerned, against which a protest will lie. * * *"

Plaintiff's protest 265822–K seems to rest on the premise that the payment of duties, including the protested fee, at the time of entry was such a legal decision by the collector as section 514 contemplates. In the Dart case, supra, our appeals court recently held (p. 47 of Treasury Decisions, dated April 5, 1956, vol. 91, No. 14):

" * * * that the assessing of duties at the time of entry was not a

'decision' within section 514, supra, which was final and conclusive after 60 days had elapsed which would deprive the Government of the right to liquidate the entry at a subsequent date. * * *" [Italics quoted.]

Defendant's motion to dismiss protest 265822–K is granted on the ground that it was prematurely filed. Defendant's motion to dismiss protest 265823–K is denied for the reasons we have stated.