The UNITED STATES, Petitioner,

v.

Nils A. BOE, Chief Judge, United States Customs Court, Respondent,

The Servco Company, Respondent-Party In Interest.

Appeal No. 76–22.

United States Court of Customs and Patent Appeals.

Nov. 4, 1976.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Andrew P. Vance, Chief, Customs Section, New York City, Mark K. Neville, Jr., counsel of record, for petitioner.

Nils A. Boe, New York City, counsel of record, for respondent.

Robert Glenn White, Glad, Tuttle & White, Los Angeles, Cal., counsel of record, for respondent-party-in-interest.

E. Thomas Honey, New York City, counsel of record, for amicus curiae.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

The United States (petitioner), pursuant to 28 U.S.C. § 1651(a), petitions for a writ of prohibition and mandamus against The Honorable Nils A. Boe, Chief Judge of the United States Customs Court (respondent), seeking, in Consolidated Customs Court No. 75-5-01351, *Servco Company v. United States*, (1) to prohibit the Customs Court from asserting jurisdiction over that civil action, (2) to prohibit the Customs Court from engaging in any other conduct inconsistent with the writ, (3) to order the Customs Court to vacate the Orders entered on January 12 and March 1, 1976, (4) to order dismissal of the civil action for lack of jurisdiction, and (5) to order return of the official entry papers to the appropriate District Directors of Customs. The petition is granted.

## Issues

The issues are (1) whether the Customs Court lacks jurisdiction over the involved civil action and, if so, (2) whether this court should exercise its discretionary authority to issue the requested writ.

## Background

The imported merchandise is claimed by the importer to consist of nonmagnetic austenitic drill collars identical to those in *United States v. Servco Co.*, 477 F.2d 579, 60 CCPA 137, C.A.D. 1098 (1973). The present merchandise was entered at New Orleans on July 8, July 24, and August 29, 1974, and at Houston on October 17, 1974, and classified under items 610.51 and 610.-52, TSUS.

On December 3, 1974, and January 14, 1975, counsel for importer wrote to the District Directors of New Orleans and Houston, respectively, stating: that the

merchandise was identical to that held classifiable under item 664.05 in C.A.D. 1098, supra; that there had been no limitation of that decision; that the importer had tendered duties "excessive" in view of C.A.D. 1098; and that prompt and "proper" liquidation was requested.

The response of the Director at Houston stated:

This office is presently acting under advice from the Assistant Chief Counsel, Customs Court Litigation, New York, New York, in not following the decision in *The United States v. The Servco Company,* C.A.D. 1098. This advice was given to all interested ports, and read in part: The Government is presently considering the possibility of limiting that decision and retrying the issues therein. Consequently, the decision should not be followed, either in the review of protests or in current liquidations, pending resolution of that question.

Regarding the Directors' responses as "decisions" of Customs officers, counsel for importer filed "protests" on January 20, 1975, and February 18, 1975, which were purportedly denied. The "protests" repeated, essentially, the statements in counsel's letters referred to above, adding reference to the Directors' "refusal" to comply with the decision in C.A.D. 1098 and to denial of due process of law.

On May 27, 1975, and July 1, 1975, the importer initiated separate actions in the Customs Court, which were consolidated to create the subject civil action on September 15, 1975.

In October 1975, the importer filed a complaint alleging, *inter alia,* that the decisions protested were those of the District Directors referred to above and that the goods were identical to those in C.A.D. 1098. The complaint ended with this prayer:

THEREFORE, plaintiff prays for judgment overruling the decision of the responsible Customs officers at the Ports of entry in refusing to direct entry and liquidation of the merchandise in issue under Item 664.05, TSUS, and directing that the said referenced appropriate and responsible Customs officers liquidate the entries in question under Item 664.05, TSUS, as amended, and for refund of the exactions made of the plaintiff, upon liquidation under Item 664.05, TSUS, as amended.

Petitioner moved to dismiss the action for lack of jurisdiction because the entries had not yet been liquidated, i. e., because the "protests" were premature. The importer responded, asserting jurisdiction existed pursuant to 19 U.S.C. § 1514(b)(2)(B). Petitioner filed a reply accompanied by two affidavits, each stating that no liquidation had occurred and that no decision refusing to liquidate had been made. Both affidavits expressed an intent to follow C.A.D. 1098, the second affidavit ending with this assertion:

In fact, since the filing of the instant protest, a decision has been reached to liquidate these entries in accordance with the Court of Customs and Patent Appeals decision in C.A.D. 1098, insofar as they involve merchandise which is in all material respects similar to the merchandise then before the court, and equally dedicated to use as drill collars.

Petitioner argued in its reply that the Directors never "decided" not to liquidate; that 19 U.S.C. § 1514(b)(2)(B) is inapplicable; that no time limit exists for liquidation; and that the Customs Court has no equity jurisdiction.

On January 9, 1976, respondent issued an order (entered on January 12) that a proposed judgment based on an agreed statement of facts be submitted within 90 days or, in the alternative, that an answer be filed by petitioner within 120 days. The order included the following as its basis:

It appearing under the statutes of the United States and the rules of court that jurisdiction properly has been obtained in this court and that the right of the plaintiff to present his cause of action for speedy determination has been unnecessarily prolonged, and

It further appearing * * * that the defendant has reconsidered its prior decision with respect to the classification of

the merchandise involved in the within action provided that such material is in all respects similar to the merchandise involved in the Court of Customs and Patent Appeals decision C.A.D. 1098 and that, accordingly, no disagreement between plaintiff and defendant with respect to the issues originally involved herein may continue to exist * * *.

Petitioner then moved for rehearing and reconsideration or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1541(b). On March 1, 1976, respondent denied both motions and filed a Memorandum Opinion reading, in its entirety, as follows:

> In its prior order of January 9, 1976, the court has provided two alternatives:
> 1. The settlement of the within action through the established judicial procedure of the forum in which the action is presently pending, or
> 2. The filing of an answer by the defendant.
>
> If the provision in the prior order of the court relating to a voluntary settlement on an agreed statement of facts—which customarily includes consultation with and the recommendation of the customs service—is feared by the defendant to be an application of supervisory powers over this administrative department, the fullest opportunity to proceed with the orderly trial of all issues of fact and law in the instant case is afforded by the filing of an answer.
>
> The joinder of issue and subsequent trial may properly permit a more complete consideration of all of the facts alleged by the plaintiff in its complaint presently on file prior to a determination of the question of jurisdiction raised by the defendant herein.

The goods have been entered and released by Customs. Servco has deposited the estimated duties provided under item 610.52 with the additional duties of items 607.01 and 607.02, while asserting its entitlement to the lower duty of item 664.05. To date there has been no liquidation, and there can be none while this action is pending, the entry papers being in the custody of the court.

Before us, petitioner filed an exhaustive brief accompanied by numerous exhibits. A response was filed by respondent. Briefs were filed by the respondent-party in interest (importer) and by the Association of the Customs Bar as *amicus curiae*. Petitioner filed a reply.

## OPINION

### *Jurisdiction*

■ The United States cannot be sued without explicit waiver of its sovereign immunity. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Statutes waiving immunity, and thereby defining jurisdiction, must be strictly construed. *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Blackfeather v. United States*, 190 U.S. 368, 23 S.Ct. 772, 47 L.Ed. 1099 (1903). In *United States v. Sherwood*, supra, 312 U.S. at 586, 61 S.Ct. at 769, the Supreme Court stated:

> The United States, as sovereign, is immune from suit save as it consents to be sued, * * * and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. [Citations omitted.]

■ The consent of the sovereign to be sued in the Customs Court is found in 28 U.S.C. § 1582,[1] which both establishes and limits the jurisdiction of that court. The terms of consent herein applicable are three

---

1. 28 U.S.C. § 1582:
 § 1582. Jurisdiction of the Customs Court.
 (a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the

Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves:

in number. They specifically confine the jurisdiction of the Customs Court to actions in which (1) "a protest has been filed, as prescribed by section 514 of the Tariff Act of 1930, as amended [19 U.S.C. 1514]," [2] (2) such protest has been "denied in accordance with * * * section 515 of the Tariff Act of 1930, as amended [19 U.S.C. 1515]," [3] and (3) "all liquidated duties * * *

(1) the appraised value of merchandise; (2) the classification and rate and amount of duties chargeable; (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; (4) the exclusion of merchandise from entry or delivery under any provisions of the customs laws; (5) the liquidation or reliquidation of an entry, or a modification thereof; (6) the refusal to pay a claim for drawback; or (7) the refusal to reliquidate an entry under section 520(c) of the Tariff Act of 1930, as amended.

\* \* \* \* \* \*

(c) The Customs Court shall not have jurisdiction of an action unless (1) either a protest has been filed, as prescribed by section 514 of the Tariff Act of 1930, as amended, and denied in accordance with the provisions of section 515 of the Tariff Act of 1930, as amended, * * * and (2) * * * all liquidated duties, charges or exactions have been paid at the time the action is filed.

\* \* \* \* \* \*

2. 19 U.S.C. § 1514:

§ 1514. Protest against decision of appropriate customs officer.—
Finality of decisions; return of papers.
(a) [D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—
(1) the appraised value of merchandise;
(2) the classification and rate and amount of duties chargeable;
(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
(4) the exclusion of merchandise from entry or delivery under any provision of the customs laws;
(5) the liquidation or reliquidation of an entry, or any modification thereof;
(6) the refusal to pay a claim for drawback; and
(7) the refusal to reliquidate an entry under section 1520(c) of this title,
shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court in accordance with section 2632 of

have been paid." Those jurisdiction-conferring terms are mandatory, the statute having provided no room or opportunity for the exercise of discretion.

■ It is undisputed that no liquidation has occurred herein. Protests purportedly filed under the authority of § 1514(b)(2)(A) would therefore be premature and non-jus-

Title 28 within the time prescribed by section 2631 of that title * * *.
Form, number, and amendment of protest; filing of protest.
(b)(1) A protest of a decision under subsection (a) of this section shall be filed in writing with the appropriate customs officer designated in regulations prescribed by the Secretary, setting forth distinctly and specifically each decision described in subsection (a) of this section as to which protest is made; * * *
(2) A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—
(A) notice of liquidation or reliquidation, or
(B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

3. 19 U.S.C. § 1515:

§ 1515. Review of protests; administrative review and of decisions; request for accelerated disposition of protest.
(a) Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid. * * * Notice of the denial of any protest shall be mailed in the form and manner prescribed by the Secretary.
(b) A request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed by certified or registered mail to the appropriate customs officer any time after ninety days following the filing of such protest. For purposes of section 1582 of Title 28, a protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.

ticiable in the Customs Court. Importer says its protest is against the "arbitrary action" of the Customs Service "requiring a party to enter and pay duty on merchandise * * * adjudicated to be entitled to a different rate of duty, and [refusing] to act on the entires so that the normal protest procedure might be utilized, all without proper and public authorization from the Commissioner of Customs." Importer thus admits that it is not utilizing the "normal protest procedure."

The argument that the protests herein are among those prescribed in § 1514(b)(2)(B) is ill founded. The "circumstances" *sub judice* are clearly not those to which "subparagraph (A)," (i. e., a notice of liquidation) is "inapplicable." [4] On the contrary, liquidation is precisely what is sought by the importer. Indeed, importer seeks a prompt and specific liquidation under its claimed item 664.05.

Moreover, the dispute between the parties concerns classification of the merchandise.[5] Classification is but one step in the liquidation process, appraisement being another. Hence the subject civil action directly involves the liquidation procedure. Such actions are governed by § 1514(b)(2)(A). Liquidation not having occurred, importer's protests were premature. *Faber, Coe & Gregg (Inc.) v. United States*, 19 CCPA 8, 14, T.D. 44851, *cert. denied*, 284 U.S. 634, 52

S.Ct. 18, 76 L.Ed. 539 (1931); *Waddell v. United States*, 13 Ct.Cust.App. 424, 427, T.D. 41342 (1926); *Best Foods, Inc. v. United States*, 37 Cust.Ct. 1, C.D. 1791, 147 F.Supp. 749 (1956). As Judge Newman stated, as recently as 1973 in *Nikko Boeki Int'l, Inc. v. United States*, 71 Cust.Ct. 16, C.D. 4464:

In sum, protest Nos. 30011–000770 and 30011–000771 were filed prematurely, in contravention of the provisions of section 514(b)(2), as amended, and consequently, this court lacks jurisdiction thereof.

Further, exercise of Customs Court jurisdiction at the classification stage of the liquidation process would foster piecemeal litigation, a result which the requirement for payment of all *liquidated* duties prior to suit, 28 U.S.C. § 1582(c), is clearly designed to avoid. The importer has paid the estimated duties to obtain entry of the merchandise. However, there having been no liquidation, the full amount of *liquidated* duties due can be neither known nor paid. Until those duties are paid, the Customs Court has no jurisdiction to hear any complaint concerning the classification of the merchandise entered. *A. W. Fenton Co. v. United States*, 55 CCPA 54, C.A.D. 933 (1968).

The importer's presumption (that the Customs Service must either follow C.A.D.

---

**4.** The importer argues that § 1514(b)(2)(B) *must* be applicable, in order that liquidation not be an "impenetrable wall," or "an absolute bar" to Customs Court authority, or an "impenetrable shield" for all Customs Service actions prior to liquidation, and in order that § 1514(b)(2)(B) not be "removed" or "repealed." Petitioner responds that § 1514(b)(2)(B) provides for protests against decisions described at § 1514(a)(3) and (4). Having determined that § 1514(b)(2)(B) is not applicable to the protests herein, it is unnecessary for us to consider decisions and protests to which that subsection might be applicable.

**5.** At least initially. The court order of January 12, 1976, recognized that the United States had decided to classify as requested by importer if the merchandise was similar to that in C.A.D. 1098. We admit to some difficulty in understanding why the action was not thereupon dismissed for failure to meet the constitutional

requirement that a case or controversy must exist before federal jurisdiction will attach.

Prompt dismissal would have served the interest of all concerned. With immediate return of the entry papers, the liquidation sought by importer might by now have been completed. Importer's complaint that the Customs Service has no "unreviewable right to hold [its] money 'on the back burner' while [reflecting] on whether * * * to refund it" has a hollow ring, when it is importer's resistance to dismissal that delays the refund (if one be due) of its money.

Because of growing interest in the Customs Court's jurisdiction (generated at least in part by crowded dockets in the district courts), and in view of petitioner's indication of recent filing of suits like the subject civil action, we deem advisable the present clarification of the jurisdiction of the Customs Court as it relates to the facts herein.

1098 [6] or issue a prompt notice [7] limiting its application), the importer's resulting conclusion (that failure to do one or the other promptly [8] is a violation of due process), and the importer's unsupported, and unsupportable assumption (that the Customs Court can prevent such "violation") [9] need not be definitively treated at this point. It is sufficient to observe that the subject civil action, absent those considerations, is simply an action for classification of merchandise under a certain claimed provision of the Tariff Schedules. However, at least two of the § 1582-mandated terms of consent to such actions are missing in the present case, i. e., term (1), protest after liquidation, and term (3), payment of all liquidated duties.[10] Hence the Customs Court was clearly devoid of jurisdiction over the subject civil action.

No citation of specific statutory or factual basis for jurisdiction over the subject civil action appears in the orders or memorandum opinion below. No effort to support jurisdiction is made before us by either the respondent or *amicus*. Importer devotes only a few sentences to § 1514(b)(2)(B). The entire presentations here of respondent and *amicus*, and almost the entire presentation of importer, are limited to reasons why the writ should not issue.

### The Write

■ All parties recognize that this court has the power to grant the requested writ. 28 U.S.C. § 1651(a). The determination of whether that power should be exercised entails our full recognition of the extraordina-

---

6. The advice of the Assistant Chief Counsel, that our decision "should not be followed," may at first blush seem a shocking arrogance injurious to the "domestic tranquility" envisaged in the Constitution. The fact is, however, that the record of the Customs Service, over the 67 year history of this court, is remarkably free of charges of truculence or of refusal to follow court decisions. That record is enhanced when the options of the Customs Service are understood. See *United States v. Stone & Downer Co.*, 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927); *United States v. Boone*, 38 CCPA 89, 188 F.2d 808, C.A.D. 445 (1951); *Lamont, Corliss & Co. v. United States*, 18 CCPA 431, T.D. 44682, *cert. denied*, 284 U.S. 622, 52 S.Ct. 10, 76 L.Ed. 531 (1931). Moreover, the subject civil action depends entirely upon importer's assertion that the present merchandise is identical to that in C.A.D. 1098, an assertion not administratively considered when the complaint was filed, so far as the record indicates.

7. See 19 CFR 152.16(e) (1975).

8. Importer demanded liquidation within five months of the first New Orleans entry and within three months of the Houston entry. As noted above, liquidation was being withheld because the government was considering the possibility of limiting the decision in C.A.D. 1098 and retrying the issue. The suspension of liquidation pending receipt of instructions was succinctly supported and clarified in the scholarly opinion of Judge Re of the Customs Court in *Seneca Grape Juice Corp. v. United States*, 71 Cust.Ct. 131, C.D. 4486, 367 F.Supp. 1396 (1973), *motion to accept appeal denied*, 492 F.2d 1235, 61 CCPA 118 (1974).

9. Absent jurisdiction, an extended discussion of respondent's belief that "any" Article III court should possess inherent powers which "might be characterized as supervisory in nature," or of whether the Customs Court has "equity powers," is unnecessary. The Customs Court has no power to supervise the review of importations by the Customs Service. *Matsushita Electric Industrial Co. v. United States Treasury Department*, 485 F.2d 1402, 60 CCPA 85, C.A.D. 1086, *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). The Customs Court has itself so held in numerous decisions. Equity power can apply only to matters within a court's jurisdiction and cannot be exercised in disregard of the mandatory requirements of the jurisdictional statute. *American Mail Line, Ltd. v. United States*, 34 CCPA 1, C.A.D. 335 (1946); *Jacksonville Paper Co. v. United States*, 30 CCPA 159, C.A.D. 228, *cert. denied*, 320 U.S. 737, 64 S.Ct. 36, 88 L.Ed. 436 (1943). The jurisdiction of Article III courts, below the Supreme Court, is limited and dependent upon Congressional implementation of Article III. Wright, *Handbook of the Law of Federal Courts* § 7 (2d ed. 1970); Wechsler, *The Courts and the Constitution* 7 (1965).

10. Though not definitively argued, the record fails to indicate that term (2), denial of a protest under § 1515 (note 3, supra) was met. There is no indication that a request for accelerated disposition of importer's protests was filed. In the absence of such request, § 1515 provides a two year period for review of protests and refund of excess duties paid.

ry nature of the relief requested. Though the power is curative, it is strong medicine and its use must therefore be restricted to the most serious and critical ills. Use of the power is thus not unfettered. On the contrary, its reparative function is to be sparingly employed.[11]

■ A basic tenet of our jurisprudence is that appellate review, in all but narrowly defined, exceptional circumstances, should be postponed until final judgment has been rendered by the trial court. *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). Hence the party requesting a writ of prohibition or mandamus has the burden of showing a clear and indisputable right thereto, *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953), and must show exceptional circumstances necessitating review before final judgment below. See *De Beers Consolidated Mines Ltd. v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

■ We find such exceptional circumstances here. A decision was made that the Customs Court had jurisdiction. That decision was again made on motion for reconsideration.[12] A request under 28 U.S.C. § 1541(b) for interlocutory appeal on the question of jurisdiction was denied. Yet, as above indicated, the mandatory terms of the statute conferring jurisdiction on the Customs Court, taking all of the fact allegations of the complaint as true, were clearly absent. The insistence of the trial judge upon retaining jurisdiction under such circumstances was extra-statutory.[13]

However sincere and well-intentioned may be the judge, an attempt, by any court, to exercise a non-existent jurisdiction is an exceptional circumstance of import most grave. Such an attempt tends to chip away at that particular foundation stone in our constitutional scheme described as the separation of powers. As above indicated, courts are, in a sense, chartered institutions, operating under authority granted by the representatives of the people. Lawfully conferred jurisdiction is essential. Jurisdiction cannot be presumed, *Smith v. McCullough*, 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682 (1926); *Hanford v. Davies*, 163 U.S. 273, 16 S.Ct. 1051, 41 L.Ed. 157 (1896), or enlarged or conferred by agreement of the parties, *Mitchell v. Maurer*, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934); *S. Stern & Co. v. United States*, 331 F.2d 310, 51 CCPA 15, C.A.D. 830 (1963) *cert. denied*, 377 U.S. 909, 84 S.Ct. 1169, 12 L.Ed.2d 179 (1964), or by the court itself, *United States v. Torch Manufacturing Co., Inc.*, 509 F.2d 1187, 62 CCPA 41, C.A.D. 1143 (1975). A court's attempted exercise of power clearly beyond

11. Large segments of respondent's and *amicus'* presentations here are devoted to the fear that a grant of the writ in this case will lead to repeated bypassing of normal appellate procedures. That argument would apply to any grant of the writ and, if employed as a basis of decision, would render 28 U.S.C. § 1651(a) a nullity. It is enough to say that our decision herein is limited to the facts of this case. We have no reason to suppose that litigants before the Customs Court will abuse the writ by flooding this court with insufficiently based petitions, or to suppose that such improper petitions would not be promptly dismissed. See Gholz, *Extraordinary Writ Jurisdiction of the CCPA in Patent and Trademark Cases*, 58 J.Pat.Off.Soc'y 356 (1976).

12. Respondent nonetheless states that the writ is inappropriate "without first giving to the trial court a full opportunity to pass upon the jurisdictional issue." *Amicus* and importer join that position. Aside from the fact that the trial court had and twice took that full opportu-

nity ("It appearing * * * that jurisdiction properly has been obtained in this court * * *."), we have been cited to no fact issue requiring resolution before the jurisdictional issue could be decided and a diligent search of the record discloses no such fact issue. We fail to understand, therefore, the reference in the memorandum opinion below to the need for "more complete consideration of all the facts alleged by the plaintiff" or the reference to the necessity of a trial to determine "the question of jurisdiction raised by the defendant."

13. Reference by *amicus* to respondent's acting within his "discretionary powers" in ordering "petitioner to file its answer and to proceed to trial" is inapt. No discretion exists to disregard the jurisdictional requirements of 28 U.S.C. § 1582 and 19 U.S.C. § 1514. Reference in an order to "the statutes of the United States" or to "the rules of court" cannot confer jurisdiction where none exists.

its charter violates its very *raison d' être*. Restraint is required.

As the Supreme Court said in *Virginia v. Rives*, 100 U.S. 313, 323–24, 25 L.Ed. 667 (1879):

> In what case such a writ is warranted by the principles and usages of law it is not always easy to determine. Its use has been very much extended in modern times, and now it may be said to be an established remedy to oblige inferior courts and magistrates to do that justice which they are in duty, and by virtue of their office, bound to do. It does not lie to control judicial discretion, except when that discretion has been abused; but it is a remedy when the case is outside of the exercise of this discretion, and outside the jurisdiction of the court or officer to which or to whom the writ is addressed. One of its peculiar and more common uses is to restrain inferior courts and to keep them within their lawful bounds.

■ We do not doubt that denial below of the motion to dismiss rested upon a concept thought to serve the ends of justice. Nor are we unsympathetic with the expressed concern for apparently unnecessary delay. Having found, however, that the trial court has stepped beyond its "lawful bounds," we must perform the function which devolves upon us in such circumstances.[14] *Ex parte Peru*, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943). In *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), the Court noted:

> We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances existing here.

Respondent asserts that our grant of the writ would "destroy the right and prerogative of a trial court to proceed in an orderly manner within its sound discretion to make the ultimate determination as to the question of jurisdiction." But we can hardly destroy the right to make a decision already twice made. We can only, when required, undo the effect of an erroneous decision and thereby preclude its repetition.

This case does not involve the lower court's acceptance of jurisdiction to decide jurisdiction. That stage was passed when jurisdiction was found. (See note 12, supra.) Nor does this case involve a motion to dismiss for failure to state a cause of action. (See *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), describing the distinction.) Thus respondent's expressed intent to rule on an expected renewal of attack on its jurisdiction in the answer, "at a time which in the sound discretion of a trial court might be deemed appropriate," is of no moment. The appropriate time had passed, jurisdiction was lacking, and as above indicated, the court had no discretion to proceed further.

■ When, as here, all facts touching upon a challenged jurisdiction are of record, a court has at that point no right or prerogative to do other than to decide the question. When, as here, jurisdiction is clearly lacking, further proceedings cannot be permitted. The court had no power to order entry of judgment on an agreed statement or to order that an answer be filed. It had no power to do anything, other than to dismiss the action. The orders below were thus nullities, and respondent's position, that no harm was done because petitioner was given alternatives, is erroneous.

Though respondent twice decided, over vigorous protests and on a complete factual record, that jurisdiction existed, a lingering

---

14. Respondent states that the petition is an attempt "to regulate the manner and the time in which matters submitted to this trial court should be determined" comparable to the reach for supervisory control over the Customs Service which petitioner sees in the orders below. The statement, however, assumes the existence of jurisdiction over the "matters submitted." Moreover, the matter of jurisdiction *should* be determined at the earliest moment. *Underwood v. Maloney*, 256 F.2d 334 (CA3), *cert. denied*, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1958).

uncertainty is indicated by the order requiring settlement or a trial to determine jurisdiction, and by the statement in the response here that "the question is not quite so simple and clear cut." To cure that uncertainty, and potentially to avoid the jurisdictional charade involving an unnecessary trial of all "facts alleged by plaintiff" *prior* to "determination of the question of jurisdiction," the interlocutory appeal provisions of 28 U.S.C. § 1541(b) were at hand.

■ Neither petitioner nor this court has been favored with a statement of specific reasons why the request for interlocutory appeal herein was denied. The granting of a request for interlocutory appeal is discretionary with both the Customs Court and this court. No rigid or universally applicable guidelines can be promulgated in advance to govern the exercise of that discretion. And when such requests are rare or rarely approved, case-by-case delineation of such guidelines is impeded. It would seem appropriate to suggest, however, that when faced with a repeated challenge to its fundamental right to function, the challenge being based on § 1582 and supported by uncontested factual affidavits, and with all jurisdictional facts of record, a court would find it the better practice to grant a request under § 1541(b). Such action would appear particularly advisable when the court is unable to note a clear, specific statutory basis of jurisdiction. Not every challenge to jurisdiction would justify the granting of such a request, of course, but in a case like the present, refusal to grant the § 1541(b) request may place the trial court in the undesirable posture of appearing to desire an exercise of jurisdiction as long as possible while frustrating the possibility of successful challenge. Granting the request for interlocutory appeal on the sole question of jurisdiction, under such circumstances, would be an exercise of that discretion which is the better part of valor. Vindication may await. If not, the very grant of the request tends to maintain the challenged court above the unseemly fray.

Respondent, *amicus*, and importer insist that petitioner has an adequate remedy,

making inappropriate and premature the extraordinary relief here requested. The alleged remedy lies in proceeding to trial and potential prosecution of an appeal thereafter. But that "remedy" overlooks the anomaly of a court *trying* a case without having jurisdiction to do so. Reliance upon availability of that remedy as a sole basis for denying the writ would effectively nullify 28 U.S.C. § 1651(a).

The argument has even more limited appeal when, as here, the writ is sought to prevent an extra-statutory attempt to exercise jurisdiction. A major purpose of keeping the issue of jurisdiction always open, and of requiring its prompt determination, is to *avoid* long, costly and unnecessary trials. *Underwood v. Maloney*, supra, note 14.

We are cited to wording in court opinions indicating: that the writ may be inappropriate where an adequate remedy, by appeal or otherwise, is available, such as *In re Rice*, 155 U.S. 396, 15 S.Ct. 149, 39 L.Ed. 198 (1894) and *Will v. United States*, supra; that the burden of proceeding to trial on the merits is insufficient ground for the writ, such as *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); and that the mere fact that a lower court's finding of jurisdiction may ultimately be proven erroneous will not justify the writ, such as *National Right to Work Legal Defense v. Richey*, 167 U.S.App.D.C. 18, 510 F.2d 1239, *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975) and *Stein v. Collinson*, 499 F.2d 91 (CA8 1974). None of those authorities, however, involved the present insistence upon exercise of jurisdiction so clearly beyond the unambiguous provisions of the statute which confers jurisdiction. Neither this court nor the Customs Court has been presented with a rational or substantial legal argument in support of jurisdiction over the subject civil action. It is unavailing to argue that a useless trial on the merits and a potential appeal constitute an adequate remedy under such circumstances.

Moreover, to force petitioner to trial of the subject civil action, before liquidation

has occurred, is to interfere in the intermediate stages of the orderly operation of the Customs Service as it carries out its statutorily assigned liquidation function.

 In the memorandum opinion, respondent indicated that a trial would cure any fear of the exercise of supervisory power which might stem from the provision of the order "relating to a voluntary settlement." But a trial would equally interfere. As is clear on the record, the liquidation process relating to the imports involved in the subject action has been halted in midstride and remains halted so long as the subject action remains in the Customs Court. The dictum in *United States Alkali Export Association v. United States*, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed.2d 1554 (1945), condemned such short-circuiting of the functions Congress has directed an administrative agency to perform. Submission to interference cannot remedy interference. On the contrary, the only remedy for unauthorized interference is its cessation at the earliest opportunity.[15]

*Conclusion*

The Customs Court having no jurisdiction over the subject civil action, it was error to deny the motion to dismiss. The attempted exercise of jurisdiction in this case constitutes an exceptional circumstance requiring corrective action by this court.

Accordingly, respondent is prohibited from exercising jurisdiction for any purpose in the subject civil action. Mandamus is issued to the extent required to vacate the Customs Court orders of January 12, 1976, and March 1, 1976, to dismiss the subject civil action for want of jurisdiction and to return the involved official entry papers to the appropriate District Directors of Customs. It is, of course, unnecessary to prohibit respondent from engaging in conduct inconsistent with the present writ.

15. Respondent states that no showing has been made of an injury to the public interest sufficient to justify the writ. But the injury caused the public interest when courts exceed their jurisdiction and when prescribed operations of executive agencies are frustrated without authority is to us fully sufficient.

In arguing that petitioner would suffer no pecuniary injury if the writ were denied, *amicus* ignores the unnecessary expenditure of taxpayer funds for trial and appeal and presumes that the duties already paid by importer will, on liquidation, turn out to exceed or equal the total actually due.